UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARGARET DRISCOLL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 17-cv-12373-ADB |
| | * | |
| SIMSBURY ASSOCIATES, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

BURROUGHS, D.J.

On August 23, 2017, Plaintiff Margaret Driscoll filed the instant complaint against her former employer, Defendant Simsbury Associates, Inc., asserting claims arising from the allegedly unlawful conditions of her employment. [ECF No. 1-1]. Plaintiff originally filed her case in state court, but Defendant removed the case to this Court on December 4, 2017 based on the Court's federal question jurisdiction over Plaintiff's claim for a violation of the federal False Claims Act, 31 U.S.C. § 3730. [ECF No. 1]. Now pending before the Court is Defendant's motion to dismiss for failure to state a claim. [ECF No. 5]. For the reasons set forth below, the complaint is dismissed.

I.  BACKGROUND

The following facts are taken from the complaint [ECF No. 1-1], accepting the well-pleaded allegations as true and drawing all reasonable inferences in favor of Plaintiff. See U.S. ex rel. Booker v. Pfizer, Inc., 9 F. Supp. 3d 34, 41 (D. Mass. 2014). Plaintiff was employed by Defendant as Executive Director of its Longwood facility, which provides living accommodations to elderly individuals. Compl. ¶ 3. When Plaintiff began working for

1

Defendant, she suspected that certain "unsavory" employees of Defendant belonged to "pernicious gangs." Id. ¶¶ 4–5. Plaintiff observed "signs of decadence" in and around Defendant's facilities, such as alcoholic beverages, drug transactions, and "detritus." Id. ¶ 4. Plaintiff "reacted to the aforementioned problems with disgust" because Defendant's facility "was advertised as a very high class, clean and respectable home for the aged and derived its reputation [from] being close to the New England Baptist Hospital." Id. ¶ 6. Therefore, Plaintiff contacted the Boston Police Department, "fired the aberrant employees who had [gang] connections," and "took steps to 'cleanup' the negative situations she found" at Defendant's facility. Id. ¶ 8.

As a result of Plaintiff's meritorious service and demeanor, she received steady accolades, positive reviews, and a $10,000 bonus. See id. ¶¶ 9–11. Plaintiff's "very positive" relationship with Defendant "came to a halt," however, when Defendant discovered that Plaintiff "sided" with a fellow employee, Gailanne Cummings, who had filed a complaint of employment discrimination and retaliation with the Massachusetts Commission Against Discrimination ("MCAD"). Id. ¶ 12. From that time forward, Plaintiff was "constantly barraged with disparaging remarks and innuendos, and even threats of physical abuse." Id. ¶ 13. For example, "one or more persons" told Plaintiff that "she was going to be held accountable because of Gailanne Cummings." Id. ¶ 12. "Senior persons" at Defendant's facilities screamed and yelled at Plaintiff, and "broadcast[ed] slanderous remarks and lies about her to her fellow employees." Id. As a result, Plaintiff became so nervous and upset that she consulted with physicians at Massachusetts General Hospital, who "documented the negative effect of the stressors that [Defendant] inflicted upon her, including . . . Post-Traumatic Stress." Id. ¶ 14.

Prior to Plaintiff's termination, she was instructed "over 100 times" to put into her

records "for billing purposes to Medicare and state reimbursement authorities" that she and her subordinates provided "full care" in cases where they had actually only provided 30 minutes of care. Compl. ¶ 15. As a result of these instructions and the other "stressors" that Defendant put upon her, Plaintiff did not receive credit for vacation time and other personal time off. Id. ¶ 16. Further, the "constant stressors, threats and other activities of [Defendant] caused Plaintiff to require medical intervention and take paid medical leave." Id. ¶ 17. Plaintiff "reported to persons in authority," including "IT person in charge" Suzanne Kevinge, that the "traumatic episodes caused by Defendant caused Plaintiff illness." Id. ¶ 18. Plaintiff asserts that she was therefore entitled to time off for "[e]mployer-caused disability" without charging it to her accumulated vacation time. Id.

## II. STANDARD OF REVIEW

In adjudicating a motion to dismiss, the Court "accept[s] as true all well-pleaded facts in the complaint and draws all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)). A complaint will survive dismissal if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Although this standard of review is "highly deferential," the Court need not accept every conclusory or generalized allegation made by a complaint. Jepson v. HSBC Bank USA, No. 12-cv-12179-LTS, 2013 WL 639184, at *2 (D. Mass. Feb. 20, 2013) (quoting United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992)), aff'd, No. 13-1364 (1st Cir. June 23, 2014). The Court must "separate the complaint's factual allegations (which must be accepted as true) from conclusory legal allegations (which need not be credited)," and then "determine whether the

remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Maddox, 732 F.3d at 80 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). A "plausible" claim is one which raises "more than the sheer possibility" that the defendant is liable, Iqbal, 556 U.S. at 678, so a claim which fails to "raise a right to relief above the speculative level" must be dismissed. Twombly, 550 U.S. at 555; accord Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012).

## III. DISCUSSION

Plaintiff asserts the following six causes of action against Defendant: (1) "intentional and/or negligent infliction of emotional distress;" (2) "*qui tam* due to violations of federal and state law;" (3) breach of contract; (4) fraud; (5) "wage and hour claims;" and (6) a violation of Mass. Gen. Laws ch. 93A. [ECF No. 1-1].

### A. Count One: Intentional/Negligent Infliction of Emotional Distress

Defendant contends that Plaintiff's claims for intentional and/or negligent infliction of emotional distress are barred by the exclusivity clause of the Massachusetts Workers' Compensation Act ("MWCA"), Mass. Gen. Laws ch. 152, § 24. In her opposition, Plaintiff argues that the conduct alleged in the complaint was not within the scope of employment, and therefore not barred by the MWCA, because (1) intentional torts which do not further the interests of the employer are not within the scope of employment, and (2) instructing an employee to commit an illegal act (here, misstating the hours of care on "records for billing purposes to Medicare and state reimbursement authorities") cannot possibly further the interests of the employer.

The MWCA bars tort claims by employees against employers where the employee has failed to expressly reserve his or her rights, and "was designed to replace tort actions by

4

providing a uniform, statutory remedy for injured workers, in contrast to a piecemeal tort-based system." Awuah v. Coverall N. Am., Inc., 952 N.E.2d 890, 898 (Mass. 2011) (internal quotations and citations omitted); see Mass. Gen. Laws ch. 152, § 24. The MWCA exclusivity provision is "construe[d] broadly," and bars common law claims for any emotional injury which "aris[es] out of and in the course of employment." Doe v. Purity Supreme, Inc., 664 N.E.2d 815, 818 (Mass. 1996); see also Tennaro v. Ryder Sys., Inc., 832 F. Supp. 494, 500–01 (D. Mass. 1993) (discussing circumstances in which emotional distress claims are and are not barred by MWCA). "An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." Doe, 664 N.E.2d at 818. Even where tortious conduct was motivated mostly by personal interests, such conduct falls within the scope of employment under Massachusetts law unless the motivation was "*purely* personal," that is, "completely unrelated to the interests of the employer." McIntyre v. United States, 447 F. Supp. 2d 54, 111 (D. Mass. 2006) (citing Pinshaw v. Metro. Dist. Comm'n, 524 N.E.2d 1351 (Mass. 1988)).[1]

Here, to the extent that the complaint sets forth any concrete detail about the factual bases for Plaintiff's emotional distress claims, all of the alleged tortious conduct apparently occurred in the workplace, as a reaction to Plaintiff's having "sided" with a co-employee who filed an employment grievance against Defendant. See Compl. ¶¶ 12–13. Thus, Plaintiff's claim is based on an injury which arose out of the "conditions . . . or incidents of" her employment, and is

---

[1] Plaintiff asserts that, to determine whether claims are barred by the MWCA, courts apply a two-pronged test that examines whether the tortious conduct occurred within the course of the employment, and also whether it was "in furtherance of the employer's interest." This language is drawn from a section of a case concerning a claim asserted against a co-employee, not an employer, and thus the standard is not applicable here. See Brown v. Nutter, McClennen & Fish, 696 N.E.2d 953, 956 (Mass. App. Ct. 1998).

5

therefore barred by the MWCA. See Doe, 664 N.E.2d at 818; see also Brown v. Nutter, McClennen & Fish, 696 N.E.2d 953, 955 (Mass. App. Ct. 1998) (explaining that, in determining whether claims against the employer are barred, "it is without consequence that the coemployee causing the injury may not have been acting in the course of his [or her] own employment or furthering their mutual employer's interest."). To the extent that Plaintiff alleges emotional distress from being instructed to falsify reports for reimbursement, such a claim also falls within the scope of employment.

Plaintiff's reliance on O'Connell v. Chasdi, 511 N.E.2d 349 (Mass. 1987) is misplaced. O'Connell considered whether an action against a fellow employee who committed an intentional tort was barred by the MWCA. See O'Connell, 511 N.E.2d at 351 n.4. The O'Connell court determined that the MWCA does not immunize employees from liability arising from their intentional torts against co-employees. Id. at 351–52. O'Connell is thus inapposite to the instant case, in which Plaintiff brings claims against her employer. See id. at 351 n.4 ("[W]e need not express an opinion whether . . . a separate action against [plaintiff's] employer would be barred by the exclusivity provisions of the [MWCA]."); see also Uwakwe v. Pelham Acad., 286 F. Supp. 3d 213, 228 (D. Mass. 2017) (distinguishing O'Connell from facts similar to those at bar), appeal docketed, No. 18-1253 (1st Cir. Mar. 28, 2018).

Defendant argues that, even if Plaintiff's claims were not barred by the MWCA, the complaint fails to allege the "extreme and outrageous conduct" required to sustain a claim for intentional infliction of emotional distress. To bring such a claim, Plaintiff must allege, inter alia, that Defendant intended to inflict emotional distress or knew, or should have known, that emotional distress was likely to ensue from its behavior, and that Defendant's behavior was extreme, outrageous, and beyond all bounds of decency. See Taylor v. Swartwout, 445 F. Supp.

6

2d 98, 104–05 (D. Mass. 2006); Foley v. Polaroid Corp., 508 N.E.2d 72, 99 (Mass. 1987) ("[L]iability cannot be predicated upon mere insults, threats, annoyances, [or] petty oppressions, . . . rather, liability [exists] only where the conduct has been so outrageous [and] extreme . . . as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (quoting Restatement (Second) of Torts § 46, comment d (1965))). To maintain her claim for negligent infliction of emotional distress, Plaintiff must allege, inter alia, negligence, causation, and physical harm manifested by objective symptomology. See Taylor, 445 F. Supp. 2d at 105 (citing Conley v. Romeri, 806 N.E.2d 933 (Mass. App. Ct. 2004)).

Here, the complaint alleges that Plaintiff was "barraged with disparaging remarks," "innuendos," and "threats of abuse," and that "[s]enior persons" screamed, yelled, and "broadcast slanderous remarks and lies about her to her fellow employees." Compl. ¶ 13. The complaint does not identify any of the individuals involved, the relationship of such individuals to Defendant, the context, time, frequency, location, or substance of their words or conduct, or any facts giving rise to an inference that Defendant plausibly knew or should have known about these words or conduct. The complaint also neglects to articulate which aspect of Defendant's conduct was negligent, how Defendant's negligence caused her injury, or any physical harm that she experienced. Thus, the allegations are too vague, conclusory, and generalized to raise a right to relief beyond a speculative level, and to fairly notify Defendant as to the factual basis for potential liability.

    **B.    Count Two: Qui Tam**

Defendant argues that Plaintiff's qui tam claims must be dismissed because Plaintiff failed to comply with the procedural requirements of the federal False Claims Act ("FCA") and

the Massachusetts False Claims Act ("MFCA"). Plaintiff does not allege that she filed her complaint under seal upon the Government prior to initiating this action as required by both the FCA and MFCA, nor does she provide any argument as to why her complaint should not be dismissed on this basis.[2]

Defendant further argues that the complaint fails to plead fraud with the particularity required to state a claim under the FCA or the MFCA. A plaintiff bringing a claim under the FCA and the MFCA must "plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b)." Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 2004 n.6 (2016); see also Com. ex rel. Riedel v. Quest Diagnostics Inc., No. SUCV2007-05416-E, 2012 WL 5288130, at *2 (Mass. Super. Aug. 24, 2012) ("Claims brought under the MFCA are subject to the heightened pleading requirements of Mass. R. Civ. P. 9(b), which states that 'in all averments of fraud, mistake, duress or undue influence, the circumstances constituting fraud . . . shall be stated with particularity.'" (quoting Mass. R. Civ. P. 9(b))). Plaintiff argues that the Court should apply a "relaxed" Rule 9(b) pleading standard here, but her argument is based on a misstatement of the applicable law. Plaintiff quotes from a First Circuit case which explained that, in general, when a court refers "to the relaxation of Rule 9(b)'s particularity requirements," this means an "opportunity for the plaintiff to plead generally at the outset and then later amend the complaint, filling in the blanks through discovery." U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 228–29 (1st Cir. 2004), abrogation on other grounds recognized in U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 46 n.7 (1st Cir. 2009). The

---

[2] The Supreme Court recently determined that dismissal is not mandatory where a plaintiff fails to serve the sealed complaint upon the Government, but a district court has the discretion to dismiss such a complaint where appropriate. State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby, 137 S. Ct. 436, 444 (2016).

court went on to hold, however, that in the context of a FCA case, "a qui tam relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery." Karvelas, 360 F.3d at 231. Thus, Plaintiff may not present general allegations and seek to amend the complaint after discovery, but rather, she is required to plead her claims with particularity at the outset. Here, the complaint lacks the detail required to state a claim under the FCA or the MFCA. The full extent of her factual allegations are that she was instructed, more than 100 times, to indicate that she and her employees had provided "full care" when they had only provided 30 minutes of care. These allegations fall far short of the factual detail required under Rule 9(b). See, e.g., United States v. Gen. Hosp. Corp., No. 15-CV-11890-ADB, 2018 WL 1586027, at *6 (D. Mass. Mar. 30, 2018) (dismissing qui tam claim where medical care provider failed to provide details of specific alleged false claims submitted to Medicare and Medicaid).

Plaintiff also notes that the First Circuit has recognized "a distinction between a qui tam action alleging that the defendant made false claims to the government, and a qui tam action in which the defendant induced *third parties* to file false claims with the government." U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P., 579 F.3d 13, 29 (1st Cir. 2009). In the latter context, a relator is not necessarily required to provide details as to each false claim. Id. Plaintiff has not explained why this exception would apply to her case. Plaintiff is not a third party, but rather, she is in the same position as the plaintiff in Karvelas, who was an employee of the hospital against which he sought to bring his qui tam action. Karvelas, 360 F.3d at 223. Thus, Plaintiff has not demonstrated that the Court should use a lower pleading standard to assess her claims. Further, Plaintiff's claims would not be viable even under the lower pleading standard, considering how little detail is set forth in the complaint's factual allegations. Accordingly,

Plaintiff has failed to state a qui tam claim, and her claim must be dismissed.

### C. Count Three: Breach of Contract

Defendant contends that Plaintiff's claim for breach of contract should be dismissed because the complaint does not describe the contract or explain the specific contractual promise that Defendant breached. Plaintiff responds that, because the complaint alleges that Plaintiff was an employee of Defendant, the court can infer that the "normal and customary elements of [employment] contract" impliedly existed between them, including "payment of salary, appropriate working area, appropriate and necessary equipment and staff." [ECF No. 10 at 5].

To state claim for breach of contract, Plaintiff must allege that a valid, binding contract existed, that Defendant breached the terms of the contract, and that Plaintiff sustained damages as a result of the breach. See Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999). To survive dismissal, plaintiff "must do more than allege, in a conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep." Brooks v. AIG SunAmerica Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007) (citing Buck v. Am. Airlines, Inc., 476 F.3d 29, 38 (1st Cir. 2007)). This "irreducible minimum" requires the pleader to "explain what obligations were imposed on each of the parties by the alleged contract." Buck, 467 F.3d at 38 (citations omitted); see Doyle v. Hasbro, Inc., 103 F.3d 186, 194–95 (1st Cir. 1996) (holding that "[c]onclusory statements that 'Hasbro and its executives failed to meet their contractual requirement' are insufficient" to satisfy federal pleadings standards).

Here, the complaint makes no attempt to define the terms of the alleged employment between Plaintiff and Defendant, or to even assert that there was a contract. The complaint states only that Plaintiff was employed by Defendant and that she should have received paid time off

which she did not receive. Compl. ¶¶ 1–15, 25, 26. Even if the Court could infer that a contract existed, the complaint does not set forth any details of the alleged contract, such as Plaintiff's salary, whether her employment was at will or for a set term, how paid time off was to accrue, and what privileges and responsibilities she had with respect to the working areas, equipment, and the staff of which she was allegedly deprived. In her brief, she asserts that the contract included the "normal and customary" elements of an employment contract, but this description also lacks sufficient detail. To the extent that Plaintiff is attempting to argue that a contract existed simply by virtue of her employment, she has cited no legal authority in support of that proposition. Therefore, Plaintiff has failed to state a claim for breach of contract. See Higgins v. Town of Concord, 246 F. Supp. 3d 502, 518 (D. Mass. 2017) (dismissing breach of contract claim where complaint "fail[ed] to identify what 'contract' is at issue" and conclusory allegations were "too vague and imprecise" to state a plausible claim).[3]

### D. Count Four: Fraud

Defendant contends that the complaint fails to state a claim for fraud upon which relief can be granted, and that the complaint lacks the particularity required to plead fraud under Federal Rule of Civil Procedure 9(b). Plaintiff did not mention her fraud claim in her opposition brief, let alone set forth any reason why it should not be dismissed. As such, Plaintiff has apparently abandoned her fraud claim or impliedly conceded that it lacks merit. See Daylily

---

[3] In her opposition brief, Plaintiff asserts that her breach of contract claim contains "an implicit claim" for breach of the implied covenant of good faith and fair dealing. [ECF No. 10 at 6]. Plaintiff did not include such a claim in her complaint, however. Id. at 6–7. Plaintiff may not amend her complaint through her opposition brief, but even if she could, the claim would fail because she has not sufficiently alleged the existence of a contract. See Human Res. Dev. Press, Inc. v. Ikon Office Sols. Co., No. CIV.A.05-30068-KPN, 2006 WL 149043, at *9 (D. Mass. Jan. 12, 2006) (explaining that "without a breach of contract, there can be no claim for a breach of an implied covenant of good faith and fair dealing").

Farms, Inc. v. Chao, 357 F. Supp. 2d 356, 359 n.3 (D. Mass. 2005) (claim deemed abandoned where plaintiff did not present any argument in response to motion to dismiss).

"To state a claim for fraud under Massachusetts law, a complaint must plausibly allege that (1) the defendant made a false representation of a material fact," (2) the defendant knew the representation was false, "(3) the defendant purposefully induced the plaintiff to rely on that representation, (4) the plaintiff relied on that representation as being true, and (5) that plaintiff was damaged by acting on that representation." Kenney v. U.S. Bank, N.A., No. 17-cv-11427-FDS, 2017 WL 5196386, at *4 (D. Mass. Nov. 9, 2017) (citing Stolzoff v. Waste Sys. Int'l Inc., 792 N.E.2d 1031 (Mass. App. Ct. 2003)). In addition, for claims involving fraud, the complaint must "provide 'specification of the time, place, and content of an alleged false representation.'" Id. (quoting McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980)). Here, the basis for Plaintiff's fraud claim appears to be that Defendant "fail[ed] to inform the Plaintiff of the true nature of the business operated by Defendant including the understaffing of employees and the over staffing of patients," and that Defendant "misrepresent[ed]" its business "in its advertising and public face which claimed a higher than given quality of care." Compl. ¶ 28.[4] This allegation, and the complaint taken as a whole, fails to state a claim for fraud for a variety of reasons: the complaint does not allege any particular false statements upon which Plaintiff relied, Defendant's knowledge as to such statements' falsity, Defendant's intent to induce Plaintiff's reliance, any injury that Plaintiff suffered as a result of such reliance, the identity of the individuals who communicated false statements to her, and the time and place that such statements were made. Accordingly, the complaint falls far short of describing the alleged

---

[4] Count Four, asserting fraud, states that "Defendant's actions were fraudulent as against the Plaintiff for many reasons," but it is not clear which other actions Plaintiff believes constituted fraud.

fraud with the specificity required by Rule 9, and thus the fraud claim would be subject to dismissal even if it had not been abandoned.

### E. Count Five: Wage and Hour Claims

In Count Five, Plaintiff asserts that Defendant violated "the Massachusetts Wage and Hour[] laws" by denying her "monies for work performed, time or accumulated sick leave time," and unlawfully denying "the vacation pay accrued, sickness benefits promised," and other guarantees.[5] Defendant asserts that the complaint lacks the factual detail required to state a plausible claim to relief under the Massachusetts Wage Act. Plaintiff did not respond to this argument in her brief, and thus it appears that she has also abandoned this claim. See Daylily Farms, 357 F. Supp. 2d at 359 n.3.

The denial of payment or benefits to which an employee is entitled may constitute a violation the Massachusetts Wage Act. See Camara v. Att'y Gen., 941 N.E.2d 1118, 1121 (Mass. 2011). Here, however, Plaintiff has not provided enough factual detail to demonstrate that she has a plausible claim for relief. Plaintiff has not stated any facts, in even rough or general terms, as to when she was denied money for work performed, how much money she was denied, how many hours she worked without pay, how frequently this occurred, how much vacation or sick time or pay she had accrued that was denied, when the denial occurred, or what type of sickness benefit was promised but not delivered. Thus, the allegations are not sufficient to suggest a plausible claim for a violation of the Wage Act, nor do they put Defendant on notice as to the

---

[5] In the fact section of her complaint, Plaintiff alludes to a violation of the Family and Medical Leave Act ("FMLA"). Compl. ¶ 16 ("The Plaintiff lost vacation time resulting from the stressors that [Defendant] put upon her, and violations of the FMLA law relating to personal time off but was not allowed credit for that."). She does not refer to the FMLA in any of the claims listed in the complaint, however, nor does she refer to the law in her brief. Id. ¶¶ 30–31; [ECF No. 10]. As such, the Court does not interpret the complaint to assert a claim for a violation of the FMLA.

13

claim against it. See Vinton v. Tu Moda Spa for Beauty & Wellness, Inc., No. 4:16-CV-11733-DHH, 2017 WL 5147652, at *4 (D. Mass. Nov. 6, 2017) (dismissing Wage Act claims due to inadequacy of factual allegations). Accordingly, Count Five must be dismissed.

### F. Count Six: Chapter 93A Claims

Plaintiff's last claim is for a violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A. The basis for this claim is somewhat unclear, but it appears to be premised on Defendant's refusal to compensate Plaintiff for its "egregious misconduct." Compl. ¶¶ 33–34. Defendant asserts that this claim must be dismissed because Chapter 93A does not apply to employee-employer disputes. Plaintiff responds that the "calumny" alleged in the complaint and Defendant's alleged non-payment of wages constitutes a violation of Chapter 93A, but cites no case law or other authority to support this proposition.

As Defendant correctly points out, the claim must be dismissed because it is based exclusively upon Plaintiff's employment relationship with Defendant, and therefore she is not entitled to invoke the protections of the Chapter 93A. See, e.g., Debnam v. FedEx Home Delivery, 766 F.3d 93, 96–97 (1st Cir. 2014) ("an employee cannot bring a suit against his or her employer under Chapter 93A"); DeVona v. Zeitels, No. 13-10952-RWZ, 2014 WL 972145, at *5 (D. Mass. Mar. 12, 2014) (dismissing Chapter 93A claim because "'[a]n employee and employer are not engaged in trade or commerce with each other'" (quoting Manning v. Zuckerman, 444 N.E.2d 1262, 1265 (Mass. 1983))); Linkage Corp. v. Trs. of Boston Univ., 679 N.E.2d 191, 207 n.33 (Mass. 1997) (explaining that Chapter 93A does not reach "disputes stemming from an employment relationship"). Plaintiff does not cite to any case law or other authority to contradict this well-established principle, or explain why it should not apply to her case. Accordingly, the

Chapter 93A claim must be dismissed.[6]

IV. CONCLUSION

Accordingly, Defendant's motion to dismiss [ECF No. 5] is GRANTED.

**SO ORDERED.**

May 9, 2018                                                    /s/ Allison D. Burroughs
                                                               ALLISON D. BURROUGHS
                                                               U.S. DISTRICT JUDGE

---

[6] Although it is possible that Plaintiff could plausibly assert a claim for retaliation in violation of Massachusetts civil rights law, Mass. Gen. Laws ch. 151B, § 9, Plaintiff has not asserted such a claim in any count of the complaint. In any event, the Court would decline supplemental jurisdiction over such a claim given the lack of a sustainable federal cause of action.